IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL NO. 5:11CV65-RLV
(5:06CR33-RLV-DCK-1)

JEFFREY LYNN MYERS,           )
                              )
                  Petitioner, )
                              )
        vs.                   )            **ORDER**
                              )
UNITED STATES OF AMERICA,     )
                              )
                  Respondent. )
_____)

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside, or

Correct Sentence pursuant to 28 U.S.C. § 2255, (Doc. No. 1), and on the Government's Motion

for Summary Judgment, (Doc. No. 9).

I.     **BACKGROUND**

a.     Procedural Background Before Trial

On June 28, 2006, Petitioner Jeffrey Lynn Myers was initially indicted by the Grand Jury

for the Western District of North Carolina for conspiring to possess with intent to distribute at

least 50 grams of crack cocaine, in violation of 21 U.S.C. § 846 (Count One); possession with

intent to distribute at least five grams of crack cocaine, in violation of 21 U.S.C. § 841 (Count

Two); and two counts of possession with intent to distribute a detectable amount of crack

cocaine, in violation of 21 U.S.C. § 841 (Counts Three and Four). (Criminal Case No. 5:06cr33-

RLV-DCK-1, Doc. No. 3: Sealed Indictment).

On that same day, the Government filed a Notice pursuant to 21 U.S.C. § 851, indicating

that it intended to rely upon three prior felony drug trafficking convictions of Petitioner's for

1

purposes of sentencing. (Id., Doc. No. 4: Information Filed Pursuant to 21 U.S.C. § 851).

Specifically, Petitioner was convicted on May 6, 1986, and on June 6, 1986, of possession of

cocaine with intent to sell and deliver in the Superior Court of Iredell County, North Carolina,

and on December 10, 1990, of conspiracy to possess a Schedule II controlled substance with

intent to distribute in the United States District Court for the Western District of North Carolina.

(Id.).

The Grand Jury ultimately returned a Third Superseding Indictment, charging Petitioner

with conspiracy to possess at least 50 grams of crack cocaine with intent to distribute, in

violation of 21 U.S.C. §§ 846 and 841(b)(1)(A) (Count One); three counts of possession of crack

cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) (Counts Two, Three, and

Four); and one count of possession of cocaine with intent to distribute, also in violation of 21

U.S.C. § 841(a)(1) (Count Five). (Id., Doc. No. 27: Third Superseding Indictment).

   b.  Petitioner's Jury Trial and Evidence Presented

Beginning on January 24, 2007, Petitioner's case was tried before a jury in this Court.

During Petitioner's trial, the Government presented evidence of four separate incidents during

which Petitioner was found in possession of cocaine or cocaine base. The first incident occurred

on April 23, 2006, when Petitioner was stopped during a traffic checkpoint without a valid

driver's license. (Id., Doc. No. 72 at 19; 21: Trial Tr.). Lieutenant Walter Meyer with the Iredell

County Sheriff's Department testified that he smelled alcohol and asked Petitioner to get out of

the car. Lieutenant Meyer then requested permission to pat Petitioner down for weapons, at

which time Lieutenant Meyer found a plastic bag containing several rocks of crack cocaine, a

razor blade, and a crack pipe with a filter on Petitioner's person. (Id. at 24-25). It was later

determined that the quantity of crack cocaine seized on April 23 was 3.9 grams. (Id. at 158).

Petitioner's co-defendant, Rachel Couch, who was also charged in the conspiracy count, testified that she began using crack cocaine when she was eighteen years old and in cosmetology school and that Petitioner supplied her with crack cocaine. (Id. at 69). Ms. Couch testified that she saw Petitioner regularly and went to hotels with him on weekends, using either crack or powder cocaine and having sex all night. (Id. at 70; 72-74). Ms. Couch testified that Petitioner told her his cocaine supplier was a Columbian, and she also testified that she had seen Petitioner with at least three ounces of powder cocaine and with two ounces of crack cocaine. (Id. at 74-75). When asked to compare the quantity to that contained in Exhibit 4D, which exhibit contained approximately 28 grams of powder cocaine, Ms. Couch testified that the quantity of crack cocaine she had seen was twice as much. (Id. at 75; 162). Ms. Couch testified further that she accompanied Petitioner on five or six occasions to the home of a person she knew as "Tim," to whom Petitioner would bring either cocaine or crack cocaine. (Id. at 77). This testimony was corroborated by the testimony of Timothy Eckliff, who testified at trial that Petitioner provided him with crack cocaine. (Id. at 173).

On or about April 26, 2006, Ms. Couch was arrested for possession of marijuana and offered to assist law enforcement in the hopes that cooperating might help her with her state charge. (Id. at 61; 78-79). According to Ms. Couch, she met with Detectives Thomas Thompson and David Ramsey and agreed to set up an undercover drug deal with Petitioner. (Id. at 80). Ms. Couch and a female officer met with Petitioner on April 27, 2006, at which time Petitioner provided Ms. Couch with an eight-ball, or three-and-a-half grams of crack cocaine, as well as "nine extra" crack rocks, putting them in an Altoids box. (Id. at 89; 140; 145-46; 150-51). John Redmon also testified at trial that he worked with law enforcement to set up an undercover purchase of crack cocaine from Petitioner. According to Mr. Redmon, he had previously been

3

involved in the distribution of crack cocaine and had served time for at least one drug offense but ended that activity in 1991. (Id. at 187-88). Mr. Redmon testified that in the spring of 2006, an arrest warrant was issued for Mr. Redmon for sale and delivery of cocaine, though "they never actually proved it." (Id. at 189). Mr. Redmon then offered to cooperate with Detective Ramsey and telephoned Petitioner, requesting an ounce of crack cocaine. (Id. at 190-91). Detective Ramsey searched Mr. Redmon before the May 16, 2006, transaction and provided $900 to Mr. Redmon and a tape recorder on which to record the transaction. (Id. at 193; 196-97; Doc. No. 73 at 36).

The tape recorder stopped recording prior to the exchange, however; thus, there was no recording of the actual exchange, though Mr. Redmon testified that he did not realize the recording had stopped and, instead, believed that the entire transaction was recorded. (Id., Doc. No. 72 at 196; Doc. No. 73 at 21-22; 28). According to Mr. Redmon, Petitioner provided an ounce of powder cocaine, and Mr. Redmon gave Petitioner the money, turning the cocaine over to Detective Ramsey at the conclusion of the deal. (Id., Doc. No. 72 at 162; 197; Doc. No. 73 at 38).

On June 8, 2006, Petitioner was stopped again while driving with a revoked license by Lieutenant Meyer, who recalled having stopped Petitioner on April 23 during the checkpoint. (Id., Doc. No. 73 at 65). During the stop, Petitioner presented Lieutenant Meyer with a driver's license that Petitioner said that he had obtained, and the license appeared to be valid. (Id. at 66-67). Lieutenant Meyer asked Petitioner to get out of his car and explained that he would be placed in Lieutenant Meyer's patrol car while he checked on the validity of the license; Lieutenant Meyer explained that if the license was valid, he "would cut him loose." (Id. at 66-68).

4

After Petitioner got out of his own car, and before Petitioner got into Lieutenant Meyer's patrol car, Lieutenant Meyer was going to pat him down "to make sure [he didn't] have any guns or knives on [him]." (Id. at 68). Lieutenant Meyer testified that he patted Petitioner down, consistent with the training and procedures of the sheriff's department, patting his front pockets and moving up his pants legs until he reached Petitioner's "watch pocket," the pocket of the pants on the right side, just above the main pocket. (Id.). In Petitioner's watch pocket, Lieutenant Meyer "felt several small bulges just a little bit smaller than marbles," and, suspecting that they were crack cocaine, asked Petitioner if that is what they were. (Id.). Petitioner twice refused to answer Lieutenant Meyer's question, after which Lieutenant Meyer reached into the pocket and retrieved three rocks of crack cocaine, weighing 2.9 grams. (Id., Doc. No. 72 at 164; Doc. No. 73 at 68-69). Lieutenant Meyer also discovered a set of postal scales inside Petitioner's car. (Id., Doc. No. 73 at 70).

At the conclusion of the trial, the jury found Petitioner guilty as to all counts, but with respect to Count Two, one of the substantive possession-with-intent to distribute charges, the jury found Petitioner guilty only of simple possession, not possession with intent to distribute. (Id., Doc. No. 50: Verdict). As to the drug conspiracy count, the jury found that five or more grams of cocaine base was attributable to Petitioner. (Id. at 1-2).

c. Petitioner's Sentencing Proceedings

On July 3, 2007, the Probation Office submitted a Presentence Report ("PSR") in preparation for Petitioner's sentencing hearing, which report was revised on August 31, 2007, and again on November 20, 2007.[1] In the final PSR, the probation officer calculated a total

---

[1] The PSR does not appear to be docketed in Petitioner's criminal case. Therefore, the Court is relying on the Government's assertions regarding the findings and conclusions in the PSR.

offense level of 30 based on Petitioner's responsibility for 65.41 grams of crack cocaine. (Id., PSR at 7). In calculating Petitioner's criminal history points, the probation officer noted that Petitioner had prior felony convictions for two counts of robbery and one count of assault with a deadly weapon with intent to inflict serious injury in 1979, possession of a controlled substance with intent to sell and deliver and sale of cocaine in 1985, and possession of cocaine with intent to sell and deliver and sale or delivery of cocaine in 1986, none of which could be counted for purposes of Petitioner's criminal history points because of the age of these convictions. (Id. at 8-9). The probation officer also noted that Petitioner was convicted in 1990 in this Court of conspiracy to possess with intent to distribute cocaine, receiving a sentence of 210 months' imprisonment and resulting in Petitioner's imprisonment until January 13, 2006. (Id. at 10). Petitioner was arrested for a violation of his supervised release on June 28, 2006. (Id.). Based on an offense level of 30 and a criminal history category of III, the probation officer calculated a Sentencing Guidelines range of imprisonment of between 121 and 151 months. (Id. at 17).

On August 28, 2007, following the issuance of the initial PSR but prior to the first revised PSR, the Government filed a motion for an upward departure and variance. (Id., Doc. No. 56: Sealed Motion for Upward Departure). In its motion, the Government noted that Petitioner had "an almost unbroken history of criminal activity" since 1979 and that, following his release from prison after his federal conviction in 1990, Petitioner violated his supervised release by selling cocaine base in less than one month. (Id., Doc. No. 56 at 1-2). In seeking an upward departure, the Government relied on U.S.S.G. § 4A1.3 and asked for the Court to find that Petitioner's computed criminal history significantly under-represented the seriousness of his criminal history and the likelihood that he would commit further crimes. The Government noted that six of Petitioner's prior convictions, including convictions for felony drug offenses and a crime of

violence, were not counted in his criminal history computation "by the mere chance that his latest incarceration lasted long enough to exhaust the time period for counting prior sentences," as provided in U.S.S.G. § 4A1.2(e). (Id. at 4-5). The Government requested specifically that the Court upwardly depart to the career offender guideline because Petitioner would have been sentenced as a career offender, but for the fact that one or both of the necessary prior convictions could not be counted. The Government also requested, in the alternative, that the Court enter an upward variance sentence. (Id. at 9-10).

Petitioner filed a response in opposition to the Government's motion on December 3, 2007, following the issuance of the final PSR. (Id., Doc. No. 65). In his response, Petitioner stated that he was "an intelligent and friendly man with a loving and supportive family" who had taken "tangible and important steps to make amends for his mistakes." (Id. at 2). Petitioner argued that an upward departure was unwarranted. Petitioner also challenged the drug quantity used by the probation officer, arguing that he was responsible for between five and 20 grams of crack cocaine. (Id. at 5-9).

This Court conducted Petitioner's sentencing hearing on March 12, 2008. During the hearing, defense counsel argued Petitioner's objection to the drug quantity calculation, stating that "when you add up the full amount of drugs and exclude the simple possession amount, it comes to 33.44 grams of crack cocaine," which would yield an offense level of 26. (Id., Doc. No. 75 at 4-5: Sentencing Hrg. Tr.). In response, the Government presented the testimony of case agent Detective David Ramsey, who provided a summary of the trial testimony as to drug transactions and quantities to which the witnesses testified. (Id. at 5-8). At the conclusion of this testimony, the Court found, by a preponderance of the evidence, that Petitioner "handled between in excess of 35 grams of crack but less than 50," yielding an offense level of 28. (Id. at

7

14). Based on an offense level of 28 and a criminal history category of III, the applicable Guidelines range of imprisonment was between 97 and 121 months, according to the probation officer. (Id.).

However, because Petitioner was subject to a ten-year mandatory minimum term of imprisonment based on drug quantity and the Government's § 851 Notice, the Guidelines range of imprisonment was 120 to 121 months' imprisonment. (Id. at 15). The Court then considered the Government's motion for an upward departure based on the understatement of Petitioner's criminal history. (Id. at 16). After hearing at length from both counsel, Petitioner, and Petitioner's mother, the Court asked the probation officer how the Guidelines would be calculated if Petitioner's prior convictions, regardless of their age, were to be considered. (Id. at 59-60). The probation officer responded that the offenses would yield a total of 18 criminal history points, placing Petitioner in criminal history category VI. (Id. at 60).

With respect to the career offender calculation, the probation officer noted that all of the offenses listed in Paragraphs 31, 32, 33, and 36 of the PSR would qualify as career offender predicate offenses, placing Petitioner at an offense level of 37 and a criminal history category of VI, and resulting in a guidelines range of imprisonment of between 360 months and life. (Id.).

After considering this information, as well as the arguments and statements by counsel and Petitioner, this Court found that a departure for the understatement of criminal history under Sentencing Guidelines § 4A1.3 was appropriate and that in Petitioner's case, the factor was present to an exceptional degree insofar as Petitioner had "a serious criminal record which would have been scored at 18 points were it not for the age of the offenses." (Id. at 61-62). The Court found further that "those offenses were not scored because the defendant was in custody during the interval . . . between the time when those offenses were sufficiently fresh to be scored, but

8

that his term in prison did not serve to correct his behavior with respect to a law-abiding disposition and commission of crime such that when he got out, he committed a crime which began within a month of his release, and while he was on supervised release." (Id. at 62).

The Court found that Petitioner's past record was "very serious" and that his subsequent conduct showed that he was "a serious risk for recidivism," prompting the need to protect the public. The Court also noted that Petitioner's "conduct involved taking advantage of a vulnerable 18-year-old." (Id.). The Court then found that based on all of his criminal history, Petitioner qualified as a career offender, subject to a sentence of 360 months to life, based on an offense level of 37 and a criminal history category of VI. (Id.). The Court stated further that even if an upward departure under Sentencing Guidelines § 4A1.3 were not appropriate, the Court would nevertheless enter an upward variance sentence in the same range based on the sentencing factors set forth in 18 U.S.C. § 3553(a). (Id.). The Court then sentenced Petitioner to 360 months' imprisonment on each of his five convictions, to run concurrently, plus eight years of supervised release. (Id. at 66).

d. Petitioner's Appeal to the Fourth Circuit and the Pending Motion to Vacate

Petitioner appealed this Court's judgment, arguing on appeal that the Court abused its discretion in excluding evidence related to Government witness John Redmon's involvement in drug dealing and that his sentence was unreasonable, in part because the Court erroneously sentenced Petitioner as a de facto career offender. The Fourth Circuit affirmed this Court's judgment on December 16, 2009, holding that this Court properly determined that Petitioner was a de facto career offender and that its application of an upward departure was appropriate. United States v. Myers, 589 F.3d 117 (4th Cir. 2009). The Supreme Court denied Petitioner's petition for writ of certiorari on May 17, 2010. Myers v. United States, 130 S. Ct. 3306 (2010).

On May 3, 2011, Petitioner placed the timely, pending motion to vacate in the prison system for mailing, and it was stamp-filed in this Court on May 5, 2011. See (Doc. Nos. 1; 1-6 at 1). In response to Petitioner's motion, the Government has obtained an affidavit from Petitioner's trial counsel, Cecilia Oseguera, who "denies all allegations in the complaint made by [Petitioner]." (Doc. No. 8-1 at ¶ 9: Oseguera Aff.).

## II. STANDARD OF REVIEW

### A. Section 2255

Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings, sentencing courts are directed to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings" in order to determine whether a petitioner is entitled to any relief. If a petitioner's motion survives initial review and once the Government files a Response, the Court must then review the materials submitted by the parties to determine whether an evidentiary hearing is warranted under Rule 8(a) of the Rules Governing Section 2255 Proceedings. After having considered the record in this matter, including the parties' summary judgment materials, the Court finds that this matter can be resolved without an evidentiary hearing. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

### B. Summary Judgment

Summary judgment is appropriate in those cases where there is no genuine dispute as to any material fact, and it appears that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c)(2); United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991). Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). Where, however, the record taken as a whole could not lead

a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248-49 (1986).

## III.   DISCUSSION

### A.  Ineffective Assistance of Counsel

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions the accused has the right to the assistance of counsel for his defense. <u>See</u> U.S. CONST. amend. VI. To show ineffective assistance of counsel, Petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced Petitioner. <u>See</u> <u>Strickland v. Washington</u>, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Id.</u> at 689; <u>see also</u> <u>United States v. Luck</u>, 611 F.3d 183, 186 (4th Cir. 2010). Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . <u>Strickland</u> if the 'result of the proceeding was fundamentally unfair or unreliable.'" <u>Sexton v. French</u>, 163 F.3d 874, 882 (4th Cir. 1998) (quoting <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." <u>Bowie v. Branker</u>, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." <u>United States v. Rhynes</u>, 196 F.3d 207, 232 (4th Cir. 1999), <u>opinion vacated on other grounds</u>, 218 F.3d 310 (4th Cir. 2000).

  1.  Appellate counsel's failure to challenge the sufficiency of the Government's evidence as to the drug conspiracy offense.

In his first claim, Petitioner contends that the evidence was insufficient to show a conspiracy and that appellate counsel was ineffective for failing to challenge the conspiracy

11

conviction on appeal. Where a defendant challenges the sufficiency of the evidence to support the jury's verdict of guilty, a reviewing court views the evidence and all reasonable inferences in favor of the government, United States v. Cameron, 573 F.3d 179, 183 (4th Cir. 2009), sustaining the verdict if any rational fact-finder would find the essential elements beyond a reasonable doubt, United States v. Higgs, 353 F.3d 281, 313 (4th Cir. 2003). Stated another way, "'substantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt.'" Cameron, 573 F.3d at 183 (quoting United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc)). It is axiomatic that "determinations of credibility 'are within the sole province of the jury and are not susceptible to judicial review.'" Burgos, 94 F.3d at 863 (quoting United States v. Lowe, 65 F.3d 1137, 1142 (4th Cir. 1995)). A defendant challenging the sufficiency of the evidence, in the face of a guilty verdict, bears a "'heavy burden.'" United States v. Beidler, 110 F.3d 1064, 1067 (4th Cir. 1997) (quoting United States v. Hoyte, 51 F.3d 1239, 1245 (4th Cir. 1995)).

To prove a conspiracy to possess crack cocaine with the intent to distribute in violation of 21 U.S.C. § 846, the Government must establish: (1) an agreement to possess crack cocaine with intent to distribute between two or more persons; (2) the defendant knew of the conspiracy; and (3) the defendant knowingly and voluntarily became a part of the conspiracy. Burgos, 94 F.3d at 857. As the Fourth Circuit recognized in Burgos, "[b]y its very nature, a conspiracy is clandestine and covert, thereby frequently resulting in little direct evidence of [the] agreement" that is the "'gravamen of the crime of conspiracy.'" Id. (quoting United States v. Laughman, 618 F.2d 1067, 1074 (4th Cir. 1980)). A conspiracy may, therefore, "be proved wholly by circumstantial evidence," and "[c]ircumstantial evidence sufficient to support a conspiracy conviction need not exclude every reasonable hypothesis of innocence, provided the summation

12

of the evidence permits a conclusion of guilt beyond a reasonable doubt." Burgos, 94 F.3d at

858.

With respect to a particular defendant's connection to a conspiracy, "[o]nce a conspiracy

has been proved, the evidence need only establish a slight connection between any given

defendant and the conspiracy to support conviction." United States v. Strickland, 245 F.3d 368,

385 (4th Cir. 2001). Thus, to satisfy its burden, "the Government need not prove that the

defendant knew the particulars of the conspiracy or all of his coconspirators." Burgos, 94 F.3d at

858; see also United States v. Mills, 995 F.2d 480, 484 (4th Cir. 1993) ("[W]e reiterate that the

focus of a conspiracy charge is the agreement to violate the law, not whether the conspirators

have worked out the details of their confederated criminal undertakings.").

Here, viewed in the light most favorable to the Government, the evidence at trial showed

that, on four separate occasions, Petitioner was in possession of powder or crack cocaine. On

two occasions, he was providing distribution-quantity crack (3.8 grams) or powder (28 grams)

cocaine to Government witnesses, and Rachel Couch testified that she accompanied him on five

or six occasions to the home of another Government witness, Timothy Eckliff, to whom

Petitioner distributed both powder and crack cocaine. That Petitioner not only distributed crack

and powder cocaine but also distributed sufficient quantities to know that his buyers would be

distributing the cocaine he sold to them constitutes substantial evidence of a conspiracy

sufficient to support the jury's verdict in this case. The evidence at trial showed that Petitioner

participated in the powder and crack cocaine market in Iredell County, obtaining his cocaine

from a Columbian supplier, maintaining regular customers, and engaging in transactions of

sufficient quantity that the jury could reasonably infer that Petitioner knew that others had to be

involved in creating and sustaining the market in which he was participating. Because the

13

Government presented sufficient evidence from which a reasonable jury could conclude that Petitioner conspired to possess with intent to distribute cocaine, appellate counsel did not provide deficient representation in deciding not to challenge the conspiracy conviction, and there is no reasonable probability that the result would have been different if counsel had challenged the sufficiency of the evidence on appeal. In sum, having shown neither deficient representation nor prejudice, this claim of ineffective assistance of counsel fails.

      2. Petitioner's claim that counsel failed to request an informant instruction.

Petitioner next argues that counsel provided ineffective assistance of counsel in failing to request an "informant" jury instruction, relying on the Fourth Circuit's decision in <u>United States v. Luck</u>, 611 F.3d 183 (4th Cir. 2010), where the Fourth Circuit held that trial counsel's representation was constitutionally deficient where counsel failed to request an informant instruction and there was no evidence corroborating the informant's testimony. <u>Id.</u> at 188-89. Petitioner's claim is without merit. Here, defense counsel requested and received from the Court a jury instruction that "the testimony of an informant . . . must be examined and weighed by the jury with greater care than the testimony of a witness who is not so motivated" and that the jury must "determine whether an informer's testimony has been affected by self-interest, by any agreement that he or she has with the government, or his or her own interest in the outcome of the case or by prejudice against the Defendant." (Criminal Case No. 5:06cr33-RLV-DCK-1, Doc. No. 73 at 161). The Court also instructed the jury that both John Redmon and Rachel Couch could be considered informants. (<u>Id.</u>). In sum, Petitioner's claim of ineffective assistance of counsel based on his contention that defense counsel failed to request an informant instruction is without merit.

      3. Petitioner's claim of ineffective assistance of counsel based on appellate counsel's

failure to challenge Petitioner's conviction based on the testimony of a witness at trial that referred to Petitioner having been in jail.

Rule 404(b) of the Federal Rules of Evidence provides, in pertinent part, that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith" but may be admissible "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." FED. R. EVID. 404(b). In reviewing a district court's evidentiary rulings, the Fourth Circuit applies an abuse of discretion standard of review. See United States v. Queen, 132 F.3d 991, 995 (4th Cir. 1997). Here, early in Petitioner's trial, Lieutenant Meyer testified about stopping Petitioner's car as he was traveling through a checkpoint on April 23, 2006, and mentioned that when he asked Petitioner for his driver's license, Petitioner produced a prison ID. (Criminal Case No. 5:06cr33-RLV-DCK-1, Doc. No. 72 at 19; 21). Petitioner's trial counsel did not ask the Court to give a curative instruction or to strike the testimony, instead asking for a side-bar conference and requesting a mistrial "[f]or purposes of the record." (Id. at 22). In response, the Court noted that it "appear[ed] to be an inadvertent statement by the officer" but asked Government counsel to attempt not to elicit such testimony again. (Id.). Government counsel agreed and asked Lieutenant Meyer to move on and to describe what happened next. (Id. at 23). When Lieutenant Meyer again referenced asking Petitioner for his driver's license, Government counsel responded, "[w]e've been over that," and asked again about "what happened next." (Id.). Lieutenant Meyer then described directing Petitioner to pull over and asking him to step out of the vehicle and "produce any identification he had," again mentioning that Petitioner "had already shown [him] his prison ID." (Id.). Government counsel immediately interrupted Lieutenant Meyer again, reminding him that they had already been

"over that" and asked him to talk further about what happened at the scene. (Id. at 24). Defense counsel did not object to the second reference to the prison ID, and it did not come up again.

While the reference to Petitioner's having been in prison may have been prejudicial and may not have been evidence that was offered in compliance with Rule 404(b), as noted by this Court in ruling on Petitioner's motion for mistrial, it appeared to be an inadvertent reference and, because the jury was not informed of the reason Petitioner had been in jail, it was not so "prejudicial as to justify a mistrial." (Id. at 22-23). While Petitioner claims that appellate counsel should have appealed the "obvious violation" of Rule 404(b) and the failure of the Court to provide a curative instruction, trial counsel did not move to strike the testimony nor did trial counsel request a curative instruction. Accordingly, the Fourth Circuit's review would have been for plain error, requiring that Petitioner have shown on appeal not only that the Court erred in failing, sua sponte, to strike the testimony and issue a curative instruction, but that its failure to do so affected Petitioner's substantial rights. See United States v. Olano, 507 U.S. 725, 732 (1993).

To establish that the error affected his substantial rights, satisfying the third prong of the Olano test, a defendant must show that it prejudiced him, such that it "affected the outcome of the district court proceedings." Olano, 507 U.S. at 734; see also United States v. Dominguez Benitez, 542 U.S. 74, 81 (2004) (error that affects defendant's substantial rights is error "with a prejudicial effect on the outcome of a judicial proceeding"). In light of the weight of the evidence against Petitioner, including the testimony of co-conspirators who engaged in drug transactions with him or witnessed his possession of large distribution-quantities of crack and powder cocaine and the testimony of law enforcement officers who investigated the case against him, there is no reasonable probability that Petitioner could have convinced the Fourth Circuit

16

that this Court's failure sua sponte to strike those two brief mentions of his having had a prison ID would have affected the outcome of the trial. Here, the Court acted appropriately in response to what appeared to be two brief, inadvertent references to Petitioner's having been in prison, and challenging its ruling on appeal would not have yielded a different result. Accordingly, this claim of ineffective assistance of counsel fails.

4. Trial and appellate counsel's failure to argue that a fatal variance to Petitioner's indictment occurred.

Petitioner next contends that because the jury found that he was responsible for more than five grams of crack cocaine during the course of his participation in the drug conspiracy of conviction, rather than 50 grams, as alleged in the indictment, a fatal variance between the indictment and the verdict occurred, such that both trial and appellate counsel should have challenged the failure of the jury to find him guilty of an essential element of the offense as charged. Petitioner's argument is without merit. The Fifth Amendment to the United States Constitution provides, in pertinent part that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. CONST. amend. V. Because of the grand jury requirement, "only the grand jury may broaden or alter the charges in [an] indictment." United States v. Randall, 171 F.3d 195, 203 (4th Cir. 1999). Thus, "[w]hen the government, through its presentation of evidence and/or its argument, or the district court, through its instructions to the jury, or both, broadens the bases for conviction beyond those charged in the indictment, a constructive amendment . . . occurs." Id. This constructive amendment violates the Fifth Amendment "because the indictment is altered 'to change the elements of the offense charged, such that the defendant is actually convicted of a crime other than that charged in the indictment.'" Id. (quoting United States v. Schnabel, 939 F.2d 197, 203

17

(4th Cir. 1991)).  When a court amends an indictment outside of the grand jury process, it is per

se reversible error, regardless of whether the defendant has objected to that amendment.  <u>See</u>

<u>United States v. Floresca</u>, 38 F.3d 706, 714 (4th Cir. 1994) (amendment of a federal indictment

is error per se and must be corrected on appeal "even when not preserved by objection"); <u>see also</u>

<u>Randall</u>, 171 F.3d at 203.

 As the Fourth Circuit stated in <u>United States v. Ashley</u>, 606 F.3d 135 (4th Cir. 2010),

"[t]o constitute a constructive amendment, the variance must in essence 'change the elements of

the offense charged, such that the defendant is actually convicted of a crime other than that

charged in the indictment.'"  <u>Id.</u> at 141 (quoting <u>United States v. Malloy</u>, 568 F.3d 166, 178 (4th

Cir. 2009)).  No other variance violates a defendant's constitutional rights "unless it prejudices

the defendant either by surprising him at trial . . . or by exposing him to the danger of a second

prosecution for the same offense."  <u>Malloy</u>, 568 F.3d at 178.  Additionally, where a court's

instructions narrow, rather than broaden, the bases upon which the defendant may be convicted,

when compared with the indictment, there is no constructive amendment, because while

additions to the indictment are forbidden, a subtraction that results in the jury's being instructed

on what amounts to a lesser included offense is not.  <u>Ashley</u>, 606 F.3d at 142.  With respect to

Petitioner's claim that the jury's finding that five grams or more of crack cocaine was

attributable to him during the course of the drug conspiracy, rather than the 50 grams alleged by

the grand jury, Federal Rule of Criminal Procedure 31(c)(1) explicitly provides that a defendant

may properly be found guilty of "an offense necessarily included in the offense charged."  FED.

R. CRIM. P. 31(c)(1).  The jury's finding of a lesser drug amount was, at most, a verdict of guilty

as to a lesser included offense.  <u>See</u> <u>United States v. Solorio</u>, 337 F.3d 580, 591 (6th Cir. 2003)

(rejecting defendant's claim of fatal variance based on jury's finding that defendant conspired to

possess with intent to distribute lower drug quantity than that alleged in indictment). Any challenge to the jury's verdict on the basis that it constituted a constructive amendment to Petitioner's indictment or fatal variance would, therefore, have failed. In sum, this claim of ineffective assistance of counsel is without merit.

     5.  Trial counsel's failure to call the witnesses proposed by Petitioner.

     Petitioner next argues that trial counsel's representation was deficient because counsel failed to call Gloria Caldwell, a witness whose testimony, Petitioner asserts, would have "irreparably damage[d] the credibility of the Government's main witness." (Doc. No. 1-1 at 23). Petitioner also alleges more generally that he had provided counsel "with a list of potential witnesses" that would further have "damage[d] the Government's case," but counsel didn't interview any of these "critical witnesses." (Id. at 24). In response to these allegations, Petitioner's trial counsel, Ms. Oseguera, states in her affidavit that, before Petitioner's trial, "extensive investigation was conducted concerning his defense, including locating and interviewing potential defense witnesses." (Doc. No. 8-1 at ¶ 4: Oseguera Aff.).

     With respect to Ms. Caldwell, in particular, Ms. Oseguera states that she contacted her and determined that her testimony would not have assisted Petitioner with his defense. (Id.). Petitioner does not identify any other witnesses whose testimony he believes would have damaged the Government's case, but Ms. Oseguera states that she attempted to locate and interview other witnesses identified by Petitioner but concluded that their testimony would not have helped him. (Id.). As a court evaluating a trial counsel's strategic decision concerning the extent of pretrial investigation must apply "'a heavy measure of deference to counsel's judgments,'" United States v. Roane, 378 F.3d 382, 410 (4th Cir. 2004) (quoting Strickland, 466 U.S. at 691), Petitioner cannot show that Ms. Oseguera's "extensive investigation" was either

19

inadequate or prejudiced his defense. This claim, too, then, fails.

      6. Trial counsel's failure to file a motion to suppress evidence seized during the June 8, 2006 traffic stop.

Petitioner next contends that trial counsel rendered ineffective assistance of counsel by failing to file a motion to suppress the crack cocaine found by Lieutenant Meyer in Petitioner's "watch pocket" during a pat-down search for weapons during the June 8, 2006, traffic stop. Asserting that, "without provocation," Lieutenant Meyer conducted "not one but three pat-down searches of Petitioner's person," finding the crack cocaine during the third search, Petitioner argues that counsel should have moved to suppress the crack cocaine found by Lieutenant Meyer.

Petitioner's claim is without merit. Addressing pat-down searches in the context of traffic stops, the Supreme Court has made clear that "a driver, once outside the stopped vehicle, may be patted down for weapons if the officer reasonably concludes that the driver 'might be armed and presently dangerous.'" Arizona v. Johnson, 555 U.S. 323, 331 (2009) (quoting Pennsylvania v. Mimms, 434 U.S. 106, 112 (1977)). In United States v. Rooks, 596 F.3d 204 (4th Cir. 2010), the Fourth Circuit noted that "an officer who has reasonable suspicion to believe that a vehicle contains illegal drugs may order its occupants out of the vehicle and pat them down for weapons." Id. at 210. Similarly, the Fourth Circuit has recognized that drugs and guns often go together. See, e.g., United States v. Sullivan, 455 F.3d 248, 260 (4th Cir. 2006) (recognizing the "unfortunate reality that drugs and guns all too often go hand in hand") (quoting United States v. Lomax, 293 F.3d 701, 706 (4th Cir. 2002)); United States v. Stanfield, 109 F.3d 976, 984 (4th Cir. 1997) ("As we have often noted, where there are drugs, there are almost always guns."); United States v. Perrin, 45 F.3d 869, 873 (4th Cir. 1995) (finding reasonable an

officer's belief that a person selling drugs may be carrying a weapon for protection).

Here, when Lieutenant Meyer encountered Petitioner on June 8, 2006, he had, approximately six weeks earlier, discovered nearly four grams of crack cocaine on Petitioner's person during a drug and alcohol checkpoint stop. Because Petitioner was driving with a revoked license on that prior occasion, Lieutenant Meyer reasonably suspected that Petitioner was unlawfully driving his car on June 8 and, based on his recent encounter with Petitioner and the fact that Petitioner possessed a distribution-quantity of crack cocaine during that encounter, the decision to conduct a pat-down search for weapons was reasonable.

While Petitioner asserts that a video recording of that stop would show that Lieutenant Meyer actually patted him down three times, there is no evidence that such a video recording exists, but even if it does, Lieutenant Meyer testified under oath that he conducted the pat-down search in accordance with the policy and procedure of the sheriff's department, patting Petitioner's front pockets first and moving up his legs until he reached his watch pocket. There is no evidence in the record that Meyer exceeded the proper scope of a pat-down search in conducting the search of Petitioner's person on June 8, nor is there evidence that if he patted Petitioner down several times in one area, he did so unreasonably. Because Petitioner has not shown that the filing of a motion to suppress had a reasonable chance of success, he has not shown either deficient performance or prejudice sufficient to support this claim for relief.

7. Petitioner's contention that trial counsel told Petitioner not to testify.

Petitioner next asserts that trial counsel "unequivocally told Petitioner not to testify," thereby denying Petitioner his right to a fair trial. (Doc. No. 1-1 at 32). In response to this allegation, Ms. Oseguera states in her affidavit that she "informed [Petitioner] of his right to testify on his own behalf and he refused to testify." (Doc. No. 8-1 at ¶ 5). That it was

Petitioner's decision not to testify is supported by the trial transcript, which reflects that the Court specifically asked Petitioner whether he understood his right to testify and had discussed the question of whether he should testify with counsel, in response to which he confirmed that he understood his right and had discussed the decision with counsel. (Doc. No. 73 at 143). The Court also asked Petitioner whether he understood that he had "that right even if [his] counsel advised against it," in response to which Petitioner replied, "[y]es, sir." (Id.) (emphasis added). Reminding Petitioner that the decision was "entirely up to [him]," the Court asked Petitioner whether he had made up his mind and what his decision was, and Petitioner replied, "I don't wish to testify, sir." (Id. at 143-44). As the record refutes Petitioner's claim that he was denied a fair trial based on his decision not to testify, this claim fails.

8. Petitioner's contention that counsel provided inadequate representation in advocating for a lower sentence.

Arguing that his counsel provided ineffective assistance during the sentencing stage of the prosecution, Petitioner asserts, first, that "counsel was ineffective for not challenging the drug weight determination that was based solely on his co-conspirators['] testimony." (Doc. No. 1-1 at 33). As an initial matter, Petitioner's argument fails, because his sentence was driven by his criminal history and his nearly unbroken history of criminal misconduct, prompting this Court to sentence him as a de facto career offender. Thus, the drug quantity calculation did not ultimately result in a higher sentence for Petitioner. Even if it had entered into the calculus, however, Petitioner's argument fails, because his counsel did challenge the drug quantity recommended by the probation officer and argued by the Government, specifically arguing that Petitioner should be held responsible for no more than 20 grams of crack cocaine. Petitioner also argues that counsel should have presented witness testimony to his problems adjusting to

22

society following his release from prison, but there is no reasonable probability that this evidence, even if it could have been presented, would have resulted in a lower sentence.[2] Additionally, Ms. Oseguera states in her affidavit that she interviewed witnesses suggested by Petitioner in preparation for his sentencing hearing and determined that they were not credible witnesses and would not have assisted with his defense. (Doc. No. 8-1 at ¶ 7).

9. Trial and appellate counsel's failure to object to, or challenge on appeal, improper comments made by Government counsel's comments during closing arguments.

Petitioner next argues that trial and appellate counsel failed to object to, or challenge on appeal, improper comments made by Government counsel during closing argument, referring specifically to Government counsel's statements that Petitioner used his money and drugs to induce women to engage in sexual relationships with him in motel rooms in Statesville and her characterization of him as a "predator" based on his conduct with 19-year-old Rachel Couch, who testified to using drugs and having sex all night with the much older Petitioner. Petitioner asserts that these comments were especially prejudicial because he is a disfigured African-American man and Ms. Couch was a young, white female.

This contention is without merit. Whether prejudicial or not, however, counsel's comments described part of the story of Petitioner's offense. The evidence at trial was undisputed that Petitioner did, in fact, bring Ms. Couch to hotel rooms, provide her with crack cocaine, and have sex with her and other women; that he was much older and recently out of

---

[2] Finally, as to Petitioner's argument in this claim that the Government "abandoned the § 851 enhancement," there is no evidence in the record that this enhancement was abandoned, and this Court properly relied on it.

prison; and that Ms. Couch was living with her mother and in school at the time. Government counsel never mentioned race or suggested that the fact that Petitioner is African-American and Ms. Couch is white made any difference whatsoever. Additionally, even if counsel had objected to these comments, there is no reasonable probability that the result of Petitioner's trial would have been different, nor could appellate counsel have gotten Petitioner's conviction vacated on the basis of these relatively isolated comments, particularly in light of the overwhelming evidence of Petitioner's guilt as to every count of conviction.

      10. Petitioner's contention that trial counsel was ineffective for failing to object to a sentence above three years as to Count Two and that Petitioner should be resentenced to 36 months as to Count Two rather than 360 months sentenced above the statutory maximum term of imprisonment, applicable to a simple possession offense.

In his final assertion of error, Petitioner asserts, first, that counsel should have objected to the Government's charging and prosecuting him for higher drug-quantity offenses, when the Government could more easily have proven lower drug quantities, asserting that "[t]he Government was allowed to have its cake and eat [it] too." (Doc. No. 1-1 at 44). Petitioner was charged and convicted in Count One of conspiracy to possess with intent to distribute crack cocaine. Government counsel agreed to special verdict inquiries as to the drug quantity for which Petitioner was responsible, and, as set forth above, was permitted to do so. Therefore, this part of Petitioner's ineffective assistance of counsel claim fails.

Petitioner also argues that counsel was ineffective for failing to object to his sentence as to Count Two because he was convicted of simple possession as to that count and not possession with intent to distribute. The Government concedes that Petitioner is correct. The PSR states on its first page that Petitioner was convicted of simple possession under 21 U.S.C. §§ 841 and 851

24

and that the maximum term of imprisonment was no more than 30 years' imprisonment. As the Government notes, § 841 does not proscribe simple possession. Instead, the simple possession of crack cocaine is prohibited by 21 U.S.C. § 844, which provides for a mandatory minimum sentence of 90 days and a maximum sentence of three years where a defendant violates § 844 following his conviction of two drug offenses chargeable under the law of any State. See 21 U.S.C. § 844. When Petitioner was sentenced, § 844 provided for higher penalties, up to a maximum of 20 years in prison, for defendants convicted of simple possession of certain quantities of crack cocaine, depending also on their prior drug offenses. Here, however, the jury did not make a drug-quantity finding as to Count Two, and those higher penalties, therefore, do not apply. The Government notes that, as of August 3, 2010, with the enactment of the Fair Sentencing Act, § 844 no longer contains any higher penalties for crack cocaine offenses.

Here, the Government noticed three prior drug offenses in its § 851 notice, but the statutory maximum term of imprisonment applicable to Count Two was three years, not 30 years. The Government therefore concedes, and the Court finds, that counsel reasonably should have objected to Petitioner's sentence on Count Two as above the statutory maximum. The Court finds that Count Two will be vacated and the Court will enter an amended judgment sentencing Petitioner to 36 months as to Count Two.

## IV.  CONCLUSION

With the exception of the single claim of ineffective assistance of counsel to which the Government has conceded error, Petitioner has failed to produce evidence showing either deficient performance or prejudice by his trial or appellate counsel. For the reasons stated herein, the Court will dismiss the § 2255 petition and grant Respondent's motion for summary judgment as to all of Petitioner's claims except for one. That is, as to Petitioner's claim that

counsel should have objected to a sentence above three years as to Count Two, the Court will

vacate Petitioner's sentence, and enter an amended judgment, reducing Petitioner's sentence as

to Count Two from 360 months to 36 months.

**IT IS, THEREFORE, ORDERED** that:

1.      Petitioner's § 2255 motion to vacate, (Doc. No. 1), is **DENIED** in part and
        **GRANTED** in part.

2.      The Government's Motion for Summary Judgment, (Doc. No. 9), is **DENIED** in
        part and **GRANTED** in part.  That is, all of Petitioner's ineffective assistance of
        counsel claims fail except for his claim that counsel should have objected to a
        sentence to above three years as to Count Two.  Petitioner shall, therefore, be
        resentenced to 36 months as to Count Two.

3.      Pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, this Court
        declines to issue a certificate of appealability as Petitioner has not made a
        substantial showing of the denial of a constitutional right.  28 U.S.C. §
        2253(c)(2); Miller–El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to
        satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find
        the district court's assessment of the constitutional claims debatable or wrong).

.

Signed: December 17, 2013

Richard L. Voorhees
United States District Judge